HEYER *v.* BOARD OF SUPERVISORS OF SHIAWASSEE
COUNTY.

1. INTOXICATING LIQUORS—ELECTIONS—PETITION—LOCAL OPTION.
   While several petitions having similar headings may be cir-
   culated in one voting precinct and signed by the electors
   to secure the submission of local option to a vote, the same
   must be attached together to make up a single petition for
   the purposes of posting and filing, and it is not sufficient to
   attach distinct affidavits to each of the separate papers,
   treating them as distinct petitions. The statute does not
   contemplate that an elector shall be compelled to examine
   more than one petition posted in a precinct to determine
   whether or not his name has been fraudulently affixed.

2. SAME—AFFIDAVITS OF POSTING—SUFFICIENCY.
   The statutory affidavits of the posting of petitions should
   show that the separate parts of one proper petition were
   all posted at the same place; affidavits which merely
   showed that one portion was posted at a farm, mentioned
   by name, on a telegraph pole, and that another part was
   posted at the same farm on a telegraph pole, did not
   sufficiently indicate that the place of posting was identical;
   and an affidavit which did not show that the several peti-
   tions signed were all posted on one of four corners did
   not comply with the specifications of the act.

3. SAME—VALIDITY OF PETITIONS.
   And if there are duplicate petitions from the same precinct,
   all should be rejected, the fact of the existence of more
   than one renders all of them void.

4. SAME—FILING.
   The fact that several petitions from one ward were held
   together by a wire clasp and filed as one, and so stamped
   by the clerk, did not affect the legality of the ones not
   stamped; all were sufficient so long as they were duly filed.

5. SAME—REVIEW—MANDAMUS—BOARD OF SUPERVISORS.
   The question of the sufficiency of the petitions and the requi-
   site number of electors signing was one of fact for the
   determination of the board, and their conclusion could not
   be reviewed on mandamus.

Certiorari to Shiawassee; Miner, J. Submitted February 23, 1916. (Calendar No. 27,155.) Decided March 1, 1916.

Mandamus by Louis G. Heyer against the Board of Supervisors of Shiawassee County to compel respondent to reconvene and order that the question of prohibiting the sale of intoxicating liquors be submitted to the vote of the people. From an order denying the writ, relator brings certiorari. Affirmed.

*Warner & Raudabaugh,* for relator.

*Seth Q. Pulver,* for respondent.

STONE, C. J. The relator and appellant filed his petition in the circuit court for the county of Shiawassee for a writ of mandamus praying that the board of supervisors of said county be required to reconvene and determine, by resolution, that the question "Should the manufacture of liquors, and the liquor traffic, be prohibited within the county," had been prayed for by a sufficient number of electors, and to submit said question to the electors of said county at the next regular spring election. An order to show cause was granted, and the matter has been heard by the court upon the petition of relator, and the answer of respondents, together with the testimony of the county clerk.

Upon due argument and hearing, the trial court filed a written opinion denying the writ. The facts are not in dispute, and we quote the following from the opinion of the circuit court:

"The petitioners claim that, in the November election for the year 1914, the highest number of votes cast for any State officer within said county was 5,754 votes, and that 2,246 voters signed said petition praying that the question be submitted to the electors of

Shiawassee county, Mich., at the next regular spring election: Should the manufacture of liquor and the liquor traffic be prohibited within the said county?

"All the petitions filed in said county were filed with the county clerk and by him turned over to the board of supervisors. Said petitions were referred to a committee, * * * who on the 13th day of January, 1916, made their report to said board of supervisors. They reported the number of petitions from each township and found that in all the townships one petition alone had been presented, except the township of New Haven, in which they report as follows: One petition from New Haven township on which there were 23 names, one petition from New Haven township on which there were 57 names; and from all the wards of the different cities in which ·the said committee found that there was one petition from each ward, except in the Fifth ward of the city of Owosso, and in regard to the Fifth ward the committee reported as follows: One petition from the Fifth ward of the city of Owosso on which there were 98 names; one petition from the Fifth ward of the city of Owosso on which there were 116 names; one petition from the Fifth ward of the city of Owosso on which there were 48 names; one petition from the Fifth ward of the city of Owosso on which there were 45 names.

"After taking the advice that they had received from the attorney general, they say:

"'Therefore, we find the following petitions to be void, they are as follows: New Haven township 57 names and 23 names; Fifth ward of the city of Owosso 98 names; Fifth ward of the city of Owosso 116 names; Fifth ward of the city of Owosso 48 names; Fifth ward of the city of Owosso 45 names. Therefore, we report that upon the petitions handed in, we find upon legal petitions worthy to be counted, that there are only 1,859 names and therefore, beg leave to report that there are not the required number of petitioners upon legally authorized petitions to authorize this board to submit the question to the electors of this county, and that the submission of the local option question has not been prayed for by the requisite number of electors. We therefore, recommend that the prayer of the petitioners be denied. All of which is respectfully submitted.' [Signed by the committee].

"The report of the committee was adopted. Twenty ayes, three nays.

"That afterwards on the 14th day of January, 1916, said board of supervisors of Shiawassee county adjourned without day,

"The Session Laws of 1899, § 6 of Act No. 183 (2 Comp. Laws 1915, § 7085), provides:

" 'At such meetings of the board of supervisors it shall be the duty of the county clerk to lay before them petitions filed in his office praying for such submission of said question of prohibition, and when upon examination, it shall appear to the said board, upon the face of said petitions, and by the transcripts of the poll lists, or by reference to the returns and canvass of the last general election, that such submission of said question has been prayed for by the requisite number of electors, as hereinbefore provided, they shall, by resolution, determine and declare to that effect, and such determination shall be final as to the sufficiency of the petitions and the requisite number of electors signing the same.' * * *

"In the township of New Haven, there were two petitions circulated, one by John Seelhoff and the other by William McAvoy. John Seelhoff swears on the back of one of the petitions that on the 23d day of December, 1915, an exact copy of such petition and the signatures of all the petitioners thereto was posted at three of the following named places in such township, ward, or election district, to wit: One at Clark schoolhouse on telephone pole, one at George White on telephone pole, and one at J. L. Seelhoff on telephone pole, all in New Haven township, being three of the most conspicuous places in such township, ward, or election district. This affidavit refers only to the petition circulated by John Seelhoff.

"William McAvoy, who circulated the other petition, among other things, says that on the 23d day of December, 1915, an exact copy of such petition and the signatures of all the petitioners thereto was posted in each of the following named places in such township, ward, or election district, to wit: One near Clark schoolhouse on telephone pole, one at near George White farm on telephone pole, and one at near John Seelhoff farm on telephone pole, being three of the most conspicuous places in such township, ward, or

election district. This was signed and sworn to by William McAvoy on the back of the petition he circulated.

"In the Fifth ward of the city of Owosso, there were four petitions circulated: One by Andrew J. Greene, who signs his name on the back of it and swears to it on the 7th day of January, 1916, as follows: On the 23d day of December, 1915, an exact copy of such petition and the signatures of all the petitioners thereto was posted at each of the following named places in such township, ward, or election district, to wit: One at corner Main and Lansing streets, one at Main and Chipman streets, and one at corner Chipman and Stewart streets, being three of the most conspicuous places in such township, ward, or election district. The next petition was circulated by Charles Preece, and he signs the petition circulated by him and swears to it, and his affidavit is the same as the one made by Andrew J. Greene. The next petition was circulated by William F. Sharr, composed of four pages, and on the back of it is sworn to by him the same as the one sworn to by Andrew J. Greene.

"The question involved in this case is:

"*First.* Were the signatures of all the petitioners of the township of New Haven attached to one petition, and were the signatures of all the petitioners of the Fifth ward of the city of Owosso, attached to one petition?

"*Second.* Was an exact copy of said petition from the township of New Haven and all of the signatures thereto, posted in three of the most conspicuous places in said township?

"*Third.* Was an exact copy of said petition from the Fifth ward of the city of Owosso and all of the signatures thereto, posted in three of the most conspicuous places in said ward?

"The legislature in this State has seen fit to require certain conditions to be followed and carried out in getting the petition to be presented to the board of supervisors, which reads as follows (2 Comp. Laws, § 5415, 2 Comp. Laws 1915, § 7083):

" 'To enable each and every elector to determine for himself if his name has been fraudulently attached to said petition, it is hereby required that the signatures of all the petitioners residing

in any one and the same township, ward or election district, shall be attached to one petition or list, separate from those of any other township, ward or election district, and that an exact copy of said petition and all of the signatures thereto shall be posted in three of the most conspicuous places in the said township, ward or election district for at least ten days immediately prior to its presentation to the county clerk'

—or, in other words, it requires that all the petitioners residing in any one or the same township, ward, or election district, shall be attached to one petition; and, *second,* it requires that a copy of said petition and of all the signatures thereto shall be posted in three of the most conspicuous places in said township. This is, as the statute says, to enable each and every elector to determine for himself if his name has been fraudulently attached to said petition.

"In the township of New Haven, Mr. Seelhoff and Mr. McAvoy circulated the petition, and each one swore to his own petition, and there is nothing to indicate that they were attached to each other, and it nowhere appears that an exact copy of said petition and of all the signatures thereto were posted in three of the most conspicuous places in said township. Mr. Seelhoff swears that he posted his petition at the Clark schoolhouse on telephone pole, and one at George White on telephone pole, and one at J. L. Seelhoff on telephone pole. Mr. McAvoy swears he posted his petition, one near the schoolhouse on telephone pole, one at or near George White farm on telephone pole, and one at or near John Seelhoff farm on telephone pole. Whether both of these parties posted their notices in the same place does not appear. One says he posted his at the Clark schoolhouse; the other says he posted his near the Clark schoolhouse on telephone pole. One says he posted his at George White on telephone pole, and the other says he posted his at or near George White's on telephone pole. Whether George White lives on his farm does not appear, or how large George White's farm is does not appear; whether the poles were near each other does not appear. One says he posted at John Seelhoff on telephone pole. The other swears he posted his at or near John Seelhoff farm on telephone pole; but it would appear to the court that such affidavits are insufficient to inform petitioners when the

notices were posted, whether they were posted at the same place, or whether they were not. Whether they were posted within half a mile of each other does not appear.

"In the Fifth ward of the city of Owosso there were four petitions circulated. The first one was circulated by Andrew J. Greene, who on the 7th day of January, 1916, swears at the end of his petition and on the back side of his petition that on the 23d day of December, 1915,

" 'an exact copy of such petition and the signatures of all the petitioners thereto was posted at each of the following named places in such township, ward or election district, to wit: One at the corner of Main and Lansing streets, one at Main and Chipman streets, and one at corner Chipman and Stewart streets, being three of the most conspicuous places in such township, ward or election district.'

"The next one is sworn to on the back of the petition by Charles H. Preece, and the affidavit is the same as the foregoing. The next one is composed of two sheets, and on the back side is sworn to by Charles H. Preece, and an exact copy of the other petitions to said board. And the next one is composed of four pages, and on the back is sworn to by William Sharr. Or, in other words, there are four petitions, and it nowhere appears that at the time of posting said notices as required by section 5415 the signatures of all the petitioners residing in said ward were attached to one petition.

"It appears from the affidavits that the notices were posted on a corner, where one street intersects another, for instance, the corner of Main and Lansing streets, Main and Chipman streets, Chipman and Stewart streets; but none of the affidavits states upon which one of the corners the notices were posted. The court will take judicial notice that there must be four corners where two streets intersect each other. It nowhere appears whether they were all posted on the same corner, or whether or not they were posted together or attached together, as required by the statute. * * *

"The respondent's contention should prevail. The language of the statute is too plain to admit of doubt of the legislative intention to limit each township,

ward, and election district to the presentation of but
one petition to each township, or ward, whether con-
sisting of one sheet or made up of several, and to com-
mand that a copy thereof and of all the signatures be
posted in the same three places.   *   *   *   In this
case the court is of the opinion that the board of super-
visors is warranted in reaching the conclusion that
they did.    Therefore the writ of mandamus will be
denied."

The relator in his petition for the writ of certiorari
alleges the following errors:

(1) That the court erred in holding that more than
one petition was filed from the township of New Haven,
and the fifth ward of the city of Owosso.

(2) The court erred in holding that the statute lim-
ited the filing of but one petition in each township,
ward, or election district.

(3) The court erred in this: If it is correct in its
conclusion that but one petition can be filed from any
township, ward, or election district, and that there was
more than one filed in the township of New Haven, and
the fifth ward of the city of Owosso, the court erred in
holding that the one the clerk had filed, and placed his
filing stamp on, and presented to the board of super-
visors, should not be counted.

(4) That the court erred in refusing to grant the
writ of mandamus as prayed for by said relator.

1. The first and second assignments of error will be
considered together.   Counsel for relator are very
frank in the statement contained in their brief, where-
in they say:

"It is undeniable that the evidence tends to show
that there was more than one petition circulated in
the fifth ward of the city of Owosso and also in the
township of New Haven; and, if this matter alone
invalidates all the petitions from these election dis-
tricts, then this relator has no standing in court.   On
the other hand, if they were to be considered as one
petition, and that more than one could make the affi-
davits thereto in relation to the qualification and resi-
dence of the electors, and the posting of the same, then

the relator is correct in his contention that they should have been counted."

Counsel then proceed to argue that upon a proper construction of section 5415, 2 Comp. Laws (2 Comp. Laws 1915, § 7083), more than one petition may be circulated in a township, ward, or election district. They quote that portion of the section reading as follows:

"And also an affidavit or affidavits by one or more resident electors of such township, ward or election district, stating therein that an exact copy of such petition, and of all the signatures thereto, has been posted in three of the most conspicuous places in such township, ward or election district, for at least 10 days immediately prior to its presentation to the county clerk," etc.

We cannot agree with counsel in the contention that more than one petition or list can be circulated and a copy thereof posted in one township, ward, or election district, under any proper construction of this section.

Let us not be misunderstood here: We think that any number of headings of petition may be circulated in a precinct, and signed, and if all the headings are alike and in *proper form,* and if they are all attached together, and a copy thereof *posted,* and *filed* as *one* petition, the statute is complied with. The affidavit or affidavit of the genuineness of the signatures and that the signers are qualified electors may be attached to each heading, but the affidavit or affidavits as to the posting should be attached to the completed petition after the headings have all been attached together as one petition, and should refer to it as such. The difficulty and infirmity here is that there was no proof that the several petitions were ever attached together so as to form one petition, and as such were ever posted. They were treated as separate petitions with accompanying affidavits, and were so filed. This we

think was not a substantial compliance with the statute. There was a separate and distinct posting of two petitions in New Haven township, and four in the fifth ward of Owosso. In order for an elector to determine whether his name had been fraudulently attached, he would have to examine two petitions in New Haven and four in the said fifth ward. This, certainly, the statute does not contemplate.

We are of the opinion that the trial court's criticism of the affidavits as to the place of posting was well founded for the reasons stated. Posting one "at J. L. Seelhoff on telephone pole" may be very different from posting one "at near John Seelhoff farm on telephone pole." They would not appear to be the same place; the question of identity is involved. The same may be said of the posting in said fifth ward. One petition might have been posted on one of each of the four corners of the intersecting streets, for aught that appears in the affidavits, thus necessitating the examination at each corner by one in search for his signature. These things, in our opinion, are not mere technicalities, but are matters of substance.

2. Counsel for appellant also say in their brief:

"We frankly admit that our statute is peculiar, and requires the petitions to be attached from each election district, that the statutory requirement must be complied with; also, that the board of supervisors are the final judges as to whether or not the statute has been complied with, we are strongly inclined to the opinion that from the evidence before the board they might be justified in the opinion that more than one petition had been circulated and posted in the township of New Haven, and in the Fifth ward of the city of Owosso; also, they might contend that the petitions were not attached in accordance with the statute."

Counsel then argue that, admitting all these to be facts, the board had no authority to discard and refuse to consider legal petitions from different election dis-

190 Mich.—13.

tricts; that is, if two or more petitions are filed with the clerk, each of which appears to be regular upon its face, accompanied by the required affidavits, certainly one of these petitions should be considered, and not all discarded. In our opinion, if there are duplicate petitions from the same precinct, all should be rejected. The mere fact of the existence of more than one renders all void.

It appears from the testimony of the county clerk that, when the petitions from said fifth ward were filed in his office, there were four of them held together by a wire clasp. It seems that upon the outside of the petitions, and upon the back of the last one, he placed his stamp. The same thing occurred in the township of New Haven, but the county clerk testified that they were all filed in his office, and they were fastened together as above indicated. We cannot agree with counsel that the petition which actually bore the filing stamp was entitled to any more consideration than the others. They were all actually filed and posted.

As the construction adopted by the board was justified from the face of the petitions and affidavits, the trial court was right in accepting the finding of the board thereon as "final as to the sufficiency of the petitions and the requisite number of electors signing the same." The question was one of fact appearing upon the face of the papers, the determination of which by the board the court will not disturb on review. *Werstein* v. *Board of Supervisors of Calhoun County*, 156 Mich. 63 (120 N. W. 354).

Finally, counsel for relator urge that, if the conclusion reached by the trial court is correct, then those opposed to the submission of the question could circulate, post, and file petitions, thereby making more than one petition in a precinct, and thus thwart the very object of the law.

This is purely an academical question, and one that

·does not confront us in this case. No claim is made that the numerous petitions here under consideration were the result of the efforts of persons hostile to the question of submission, and no question of fraud is here involved. We concur with the trial court in re-gretting that more care was not exercised in the steps taken to submit this question, but it is the duty of the board of supervisors to substantially follow the stat-ute, and make its decision accordingly.

We find no error in the judgment of the circuit court, and the same is affirmed.

KUHN, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred. PERSON, J., did not sit.